### In re MURRAY et al.

Court of Appeals of District of Columbia.
Submitted Nov. 15, 1928. Decided
Dec. 3, 1928.

No. 2087.

864

Calvin T. Milans and Joseph H. Milans, both of Washington, D. C., and D. Anthony Usina, of New York City, for appellants.

T. A. Hostetler, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is from the decision of the Board of Patent Appeals on a reissue application for a patent granted appellants March 9, 1920. The claims, eight in number, are sufficiently described by claims 1, 4, 7, and 8, as follows:

"1. The method of welding segments of hollow articles which consists in pressing said segments at the edges between electrodes bearing on the outer faces of the segments while holding said edges properly spaced by means of blocks introduced between them and separated from the electrodes and supported only by frictional engagement with said segments, and passing a welding current between the segments."

"4. The combination with electrodes adapted to embrace sheet metal segments of separate blocks adapted to be introduced at desired points in the length of the segments to press the sides outward against the electrodes and to hold the edges rigidly during the welding operation, said blocks being of a length to span the space between the sides and being of less width so that when released and turned they may be removed easily."

"7. The method of making an axle housing with tubular end portions and a central enlarged portion which consists in forming segments thereof of sheet metal and pressing said segments together at the edges between electrodes bearing against the outer faces of the segments while holding said edges properly spaced apart at points adjacent to the central portion by means shorter than the joints and located between the edges at said points and separate from the electrodes and passing a welding current between the segments.

"8. In the butt welding of the edges of sheet metal segments to make a hollow article of varying cross-section, the method of holding such a segment rigidly in place at or near the points of greater cross-section which consists in holding said edges properly spaced apart at such points by means shorter than the joint and located between the edges at said points."

The invention as originally granted, and as set forth in the present reissue application, consists in electrically butt welding segments of hollow articles together by placing the segments in a position where they meet edge to edge. The hollow articles are held by electrodes gripping them externally adjacent to the meeting edges. The hollow segments are then internally braced by elongated blocks of metal or other suitable material so inserted as to insure proper alignment of the edges of the segments to prevent them from vibrating when being welded.

The invention is described by the Examiner as follows: "The specific embodiment of the claimed invention is the above method of welding as applied to welding two halves of an automobile rear axle housing together. The halves of the axle housing are inserted into the ends of electrodes, which have been properly hollowed out, in such a way that the major portion of the outer periphery of the axle housing half, as shown in a cross-sectional view taken at right angles to the direction of the length of the housing, is enclosed within and in contact with the electrode leaving only a short distance from the edge of the housing exposed. The electrode would probably extend the whole length of the housing. The edges are internally braced by the elongated blocks. The two halves of the housing with their electrodes are so placed that when the electrodes are moved toward each other the edges of the axle housing halves will oppose each other and when brought into contact will register properly throughout their entire length. A heavy current for a very brief interval of time is passed across the opposing edges thereby welding the two halves together. Upon the completion of the weld, the housing is removed from the electrodes and the internal braces dislodged by a rod or other similar tool and removed either through the ends of the hollow housing or through a transverse opening in the middle of the housing. The particular feature of the invention is the use of the elongated blocks for the internal bracing. The reasons set forth in the specification for the use of the elongated blocks are not particularly stressed but are set forth clearly. The reasons are their simplicity, ease of posi-

tioning and ready removal upon the conclusion of the welding."

In the process of butt welding of the edges of two sheet metal segments, the magnetic flux of the extremely high alternating current causes a violent vibration which tends to throw the edges of the segments out of registration with each other, and when this occurs it results in an imperfectly welded product. The present invention is to prevent this vibration during the welding operation.

In appellants' prior patent this was attempted to be accomplished by internal bracing blocks to press the edges of the segments against the walls of the electrodes in such manner as to retain the edges in accurate registration during the welding operation. When the welding was completed, the core, which consisted of either hardwood or metal, could be withdrawn. In the present invention, the edges of the segments are held in alignment against the electrodes by separate elongated blocks extending crosswise of the inner tube, and held in place by friction of the ends against the inner faces. They are driven into position, holding the separate segments rigidly against the outer electrodes, before the segments are fitted together for the welding process. When the welding is completed, these blocks are dislocated by a rod or other instrument inserted at the end of the tube, and when jarred loose they drop from the tube leaving it in a finished condition. The difference between the method employed in the reissue application and the original patent consists chiefly in bracing each segment by separate frictionally supporting blocks so placed that the ends are close to the edges which are to be welded, and which are carried with the respective segments when they are placed in position to be welded. It constitutes a simple but greatly improved method over the solid core as used in the original Murray invention. Especially is this improvement manifested when applied to axle housings for automobiles, where the tubular end portions of the finished product are much smaller than the central enlarged portion and where the use of a central core could not be readily devised, while the present blocks can be adjusted to any form of tubular interior and removed in the simple manner stated.

The first four claims in the reissue application, with very slight changes, were embraced in the original patent. The Examiner denied all the claims of the reissue application, while the Board allowed claim 4, denying all the others. It is not enough in a highly technical art to reject claims alone upon the ground that similar methods of internal bracing may be found expedient in building trades. We are not impressed by the illustration used by the Examiner, as follows: "For instance, in the internal bracing of concrete forms identical means of bracing (i. e., by the use of elongated blocks placed endwise—they being readily inserted, cheap, and easily removed by a rod) are employed. The braces are of various lengths and placed exactly where needed for bracing and alignment purposes." The art of electrical welding as here employed is not comparable to the crude methods of cement construction used in the building trades.

The patentability of the improvement having been recognized, and we think properly so, in the allowance of claim 4 by the Board, we are of opinion, inasmuch as the invention relates specifically to axle housings, that appellant should also be allowed claims 7 and 8. We agree with the Board that the method of welding does not differ materially from that described in appellant's original patent, and that all that appellant is entitled to are the three claims above allowed, which differ from the method claims in that they cover improvements in the apparatus.

The decision of the Board of Patent Appeals is affirmed as to claim 4, and reversed as to claims 7 and 8.